UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOHA SHUAYTO,

        Plaintiff,

                                              Case No. 15-CV-13959
v.                                            HON. GEORGE CARAM STEEH

SKIN OBSESSION,

        Defendant.
_____/

<u>ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 10).</u>

This case arises out of injuries that plaintiff Doha Shuayto sustained after using a product manufactured and sold by defendant Skin Obsession. The matter is before the court on defendant's motion for summary judgment. The court heard oral argument on the motion on October 26, 2016. For the reasons stated below, defendant's motion for summary judgment is GRANTED.

**I. Background**

Defendant manufactures and sells skin care products, including a range of glycolic acid chemical peels in various concentrations ranging from 20% glycolic acid to 50% glycolic acid. (Doc. 10-1 at 1). The product description for the 50% glycolic acid chemical peel on defendant's website states:

> Our 50% Glycolic Acid Peel is the strongest of our Glycolic acid peels and is best for people who are familiar with the peeling process. This peel is suited for tougher skin and clients who know how their skin responds to a peel. If you know how your skin responds to a chemical peel, this is the peel you should order. If you are new to peeling, a lower concentration is more appropriate. The 50% Glycolic peel is very safe when used as directed, but is a strong,

> professional strength peel (pH 1) and should be used only as directed.
>
> …
>
> Legal Disclaimer: Information provided within this entire listing is intended to be used as general information-only and is in no way intended to replace medical advice, is not to be used as a medical treatment program, nor to diagnose or cure of any disease or medical condition.  Always consult with a qualified physician for medical advice.  You are solely responsible for the use and misuse of products offered and for all actions and consequences of that use or misuse.
>
> Always patch test products before use.
>
> …
>
> Misuse of chemical products can cause injury and burns.

(Doc. 10-1 at 1-2).

Plaintiff's prior history with chemical peels consisted of one or two chemical peels administered by a physician within the preceding three or five years.  (Doc. 12-1 at 8). Plaintiff could not remember the name of these peels or their active ingredients.  (Doc. 12-1 at 9).

On April 23, 2015, plaintiff ordered a bottle of the 50% glycolic acid chemical peel from defendant's website after an unnamed acquaintance in her nail salon recommended Skin Obsession products.  (Doc. 12-1 at 5, 9).  Plaintiff testified that, prior to purchasing this 50% acid concentration, she read the product's description and understood that this was the strongest glycolic acid peel, suited for those "who are familiar with the peeling process" and "know how [their] skin responds to a chemical peel."  (Doc. 12-1 at 10).  Despite her limited experience with chemical peels, plaintiff purchased the 50% glycolic acid concentration.

Plaintiff testified that she applied the peel as instructed on the evening of April 28, 2016, felt burning and stinging, and removed the peel after 3 minutes.  (Doc. 12-1 at

- 2 -

13-14). Plaintiff's pain increased throughout the night, leading her to seek medical treatment. (Doc. 12-1 at 14). Defendant relies on plaintiff's prior statements and medical records to argue that she misused the peel; leaving it on overnight and failing to remove it with the instructed solution.

Plaintiff sustained second degree chemical burns to her face. (Doc. 10-5 at 3). Plaintiff filed this action against defendant, alleging claims for negligence, including improper manufacturing and failure to test the product, and breach of implied warranty. Defendant filed a motion for summary judgment on August 12, 2016. (Doc. 10).

## II. Standard for Summary Judgment

Rule 56(c) empowers a court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc) (citing Fed. R. Civ. P. 56(c)).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence from which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### III. Analysis

Michigan law defines a product liability action as "an action based on legal or equitable theory of liability brought for. . . injury to a person or damage to property caused by or resulting from the production of a product." M.C.L. § 600.2945(h). A manufacturer or seller is not liable unless a plaintiff establishes (1) "that the product was not reasonably safe at the time" the product left the manufacturer's control, and (2) "a practical and technically feasible alternative production practice was available" at the time the product left the manufacturer's control "that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others." M.C.L. § 600.2946(2).

"Michigan recognizes two distinct causes of action for product failures: negligence and implied warranty." *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 767 (E.D. Mich. 2010) (quoting *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 613 (E.D. Mich. 2001)). "The negligence cause of action recognizes that manufacturers have a duty to use reasonable care to produce a product that is reasonably safe for its intended, anticipated, or reasonably foreseeable use." *Id.* at 768 (citing *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 693 (1985)). A plaintiff must show that "(1) the product was defectively manufactured; (2) the product reached the plaintiff in the same condition as it was when it left the manufacturer; and (3) the defect was the proximate cause of the plaintiff's damages." *Id.* (internal citations omitted).

Alternatively, a breach of implied warranty claim emphasizes the condition of the product. *Id.* "[D]efect[s] can be found regardless of the amount of care utilized by the manufacturer." *Gregory v. Cincinnati Inc.*, 450 Mich 1, 12 (1995) (quoting *Smith v. Squibb & Sons*, 405 Mich. 79, 89 (1979)). A plaintiff bears the burden of showing "(1) a defect attributable to the manufacturer; (2) when the product left the manufacturer; (3) and that the defect caused the plaintiff's injury." *Meemis*, 717 F. Supp. 2d at 768.

These claims differ in their focus on the defendant's conduct. 20 Mich. Civ. Jur. Products Liability § 4 (2010). In a negligence action, "the plaintiff must prove that the defect was caused by the manufacturer's negligence, whereas under the implied warranty theory the plaintiff need only establish that the defect was attributable to the manufacturer, regardless of the amount of care utilized by the manufacturer." *Id.*

"Regardless of whether a plaintiff is proceeding under a negligence theory or a breach of implied warranty theory the plaintiff must, at a minimum, establish: (1) that the

product was defective; (2) that the product was defective when it left the control of the defendant; and (3) that the defective product caused the plaintiff's injuries." *Meemis*, 717 F. Supp. 2d at 768. The Court finds that plaintiff has not met its burden on any of these elements. Thus, defendant's motion for summary judgment is granted. The Court first addresses causation, followed by defectiveness.

**A. Causation**

To establish causation, plaintiff must prove that the defective product caused the injury. *Id.* A plaintiff is not required to produce evidence eliminating every other potential cause. *Skinner v. Square D Co.*, 445 Mich. 153, 159 (1994). Instead, plaintiff must provide evidence that establishes a logical sequence of cause and effect. *Id.* at 160. "While plaintiffs may show causation circumstantially, the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation." *Id.* at 163. Thus, "causation theories that are mere possibilities or, at most, equally as probable as other theories" are insufficient. *Id.* at 172-73. "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inference of causation, not mere speculation"; "the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* at 164-65.

Plaintiff has not presented substantial evidence of causation. Plaintiff does not provide any expert witness who definitively opines as to causation. Instead, plaintiff attempts to establish causation through medical records stating that plaintiff sustained a chemical burn and plaintiff's own opinion that suffering this burn after using the product indicates that it was caused by a defective product. But these medical records are not

definitive proof that a product defect caused plaintiff's burns.  Furthermore, plaintiff's own conclusory opinion is mere speculation.

**B. Defectiveness**

The Michigan Supreme Court expanded on the meaning of "defective" in the context of products liability claims, stating:

> [l]ike the courts in every other state, whether a suit is based upon negligence or implied warranty, we require the plaintiff to prove that the product itself is actionable-that something is wrong with it that makes it dangerous. This idea of "something wrong" is usually expressed by the adjective "defective" ... As a term of art, "defective" gives little difficulty when something goes wrong in the manufacturing process and the product is not in its intended condition.

*Prentis*, 421 Mich. at 683.  A plaintiff is not required to pinpoint a specific defect, but it "must provide more than mere supposition to establish" a defect.  *Meemis*, 717 F. Supp. 2d at 771.

Plaintiff claims that defendant's product is defective because plaintiff used the product as instructed, there is no evidence that the product was tampered with, and plaintiff would not have sustained its injury but for using the product.  Plaintiff does not point to any specific defect with the product.  In fact, plaintiff testified that she never learned what caused her injury, stating she may have been allergic to the product or that the acid may have been too strong for her skin.  (Doc. 12-1 at 14, 16).  This opinion is mere supposition and does not establish a genuine issue of material fact on whether defendant's product was defective.

Plaintiff does not present any evidence to support a finding of a manufacturing error or that the 50% glycolic acid peel was not in its intended condition when it left defendant's control.  Defendant manufactures glycolic acid peels by purchasing a 70%

concentration of glycolic acid and adding water to dilute it to the desired concentration. (Doc. 10-7 at 7). Defendant manufactures multiple glycolic acid peels of varying concentrations; 20%, 30%, 40%, and 50%. (Doc. 10-1 at 1). Defendant provides the report of Meyer Rosen, a nationally certified professional chemist and chemical engineer. (Doc. 10-7). Rosen concludes that the dilution process was done correctly. (Doc. 10-7 at 7). Plaintiff does not present any evidence to refute this conclusion or argue that the product she received was anything other than a 50% glycolic acid concentration, as advertised.

 Rather than suffering an injury from a product made dangerous as a result of a manufacturing flaw, the record suggests that plaintiff's injury resulted from her own decision to select a product containing a higher glycolic acid concentration than that which was appropriate for her needs. The product description on defendant's website specifically noted that the 50% glycolic acid concentration is the "strongest" product available; "best for people who are familiar with the peeling process," have "tougher skin" and "know how their skin responds to a [chemical] peel." (Doc. 10-1 at 1). In contrast, "[i]f you are new to peeling, a lower concentration is more appropriate." (Doc. 10-1 at 1). Plaintiff testified to reading this information before ordering the product. (Doc. 12-1 at 10-11). Plaintiff did not consult with a physician prior to ordering or using the product. Instead, Plaintiff testified that she thought she would try the product after hearing about Skin Obsession from an unnamed acquaintance at her nail salon. (Doc. 12-1 at 9-10). Further, plaintiff had only one or two peels with her physician prior to ordering the product. (Doc. 12-1 at 8). Despite this limited history with peeling, and

contrary to the warning in the product description, plaintiff chose the 50% glycolic acid peel rather than a lower concentration more appropriate for individuals new to peeling.

## IV. Conclusion

Plaintiff's allegations are unsupported by specific facts showing a genuine issue on the prima facie elements of its claims. Accordingly, defendant's motion for summary judgment (Doc. 10) is GRANTED.

IT IS SO ORDERED.

Dated:

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 31, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk